IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KNIGHT SPECIALTY INSURANCE COMPANY,

        Plaintiff,

vs.

JACKSONVILLE TRANSPORTATION, INC.; KIMBERLY WEAVER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RONNIE BROWN; AND, THE ESTATE OF MARTIN ALLEN CAIN,

        Defendants.

CIVIL NO. 3:20-cv-1139

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Knight Specialty Insurance Company (hereinafter "Knight"), by and through its undersigned counsel, hereby sues Defendants, Jacksonville Transportation, Inc.; Kimberly Weaver, as Personal Representative of The Estate of Ronnie Brown; and, The Estate of Martin Allen Cain, pursuant to 28 U.S.C. §§2201(a) et seq., and Rule 57 of the Federal Rules of Civil Procedure, alleges as follows:

**PREFATORY COMMENT**

1. This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under a Commercial Auto Policy issued by Knight Specialty Insurance Company to its named insured, Defendant, Jacksonville Transportation, Inc. (hereinafter "Jacksonville"). Knight seeks a declaration from this Honorable Court regarding the extent of Knight's rights and obligations, if any, under the Commercial Auto Policy, with respect to any and all putative allegations against Jacksonville in connection with an April 24, 2019 automobile accident in Whichita Falls, Texas (hereinafter "Underlying Accident") and in the underlying lawsuit filed by Kimberly Weaver, as Personal Representative of The Estate of Ronnie Brown (hereinafter

"ERB") in the Circuit Court of the Fifth Juridical Circuit in and for Marion County, Florida (hereinafter "Underlying Litigation").

## PARTIES

2. Plaintiff, Knight, is and has been at all material times a California Corporation, with its principal place of business located in California.

3. Defendant, Jacksonville, is a statutory motor carrier and has been at all material times a Florida Corporation, with its principal place of business located in Florida.

4. Defendant, ERB, is and has been at all material times a citizen of Florida with her principal residence located in Florida.

5. Defendant, The Estate of Martin Allen Cain (hereinafter "EMC"), is and has been at all material times a citizen of Florida with his principal residence located in Florida.

6. Prior to his death, Jacksonville's statutory employee, Ronnie Brown (hereinafter "RB"), was at all material times a citizen of Florida with his principal residence located in Florida.

7. Prior to his death, Jacksonville's statutory employee, Martin Allen Cain (hereinafter "MC"), was at all material times a citizen of Florida with his principal residence located in Florida.

## JURISDICTION AND VENUE

8. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

9. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367 because there is diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of fees and costs.

10. Jurisdiction is also proper based upon a federal question pursuant to 28 U.S.C. § 1331 because this declaratory judgment action requires resolution of the operation and effect of the MCS-90 Endorsement attached to the insurance policy at issue in this lawsuit.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this claim occurred in this District.

12. This Honorable Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policy at issue in this lawsuit as provided by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

### BACKGROUND FACTS OF UNDERLYING ACCIDENT

13. The underlying facts of this litigation and the Underlying Litigation arise out of the unfortunate deaths of Jacksonville's statutory employees, RB and MC, in connection with the Underlying Accident.

14. On or about April 24, 2019, Jacksonville was a motor carrier as defined by the 49 CFR § 390, Federal Motor Carrier Act, who operated commercial motor vehicles on the public highways transporting goods in interstate commerce.

15. On or about April 24, 2019, RB and MC were a team of drivers operating a 2012 Volvo tractor-trailer, VIN 4V4NC9EJ5CN557419 (hereinafter "Subject Truck") on U.S. Highway 287 near Wichita Falls, Texas, for and/or on behalf of their employer, Jacksonville.

16. While in the course and scope of their employment with Jacksonville, the Subject Truck collided with another tractor-trailer; unfortunately, as a result of the injuries suffered in this collision, both RB and MC died.

17. At all material times, RB and MV operated the Subject Truck with

Jacksonville's knowledge, consent, and permission.

18. At all material times, RB and MC were acting within the course and scope of their employment with Jacksonville with the real, apparent or implied authority to so act.

19. 49 CFR § 390, Federal Motor Carrier Act and Federal Motor Carrier Safety Administration governs and regulates Jacksonville's operations as a motor carrier. Pursuant to the Federal Motor Carrier Act and Federal Motor Carrier Safety Administration, an Employee and Employer are defined as:

> **Employee means any individual**, other than an employer, **who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)**, a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.
>
> **Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business**, or assigns employees to operate it, but such terms does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States.

20. Pursuant to the Federal Motor Carrier Act and Federal Motor Carrier Safety Administration, Jacksonville was a Motor Carrier, who is an "Employer" and RB and MC were its "Employees", in the course and scope of their employment when the Underlying Accident occurred.

## THE KNIGHT POLICY

21. On April 28, 2018, Knight issued a Commercial Auto Policy to "Jacksonville" under Policy No. KSI000014-00, effective from April 28, 2018 through April 28, 2019 with a

Liability Limit of $1,000,000 (hereinafter "Knight Policy" or "Subject Policy"). (A true and correct copy of the Knight Policy is attached hereto as Exhibit "A".)

22.     The Knight Policy has the following pertinent language:

**MOTOR CARRIER COVERAGE FORM**

**SECTION II- COVERED AUTOS LIABILITY COVERAGE**
**A. Coverage**

**We will pay all sums an "insured" legally must pay as damages because of "bodily injury** or "property damage **to which this insurance applies, caused by an '"accident" and resulting from the ownership, maintenance or use of a covered "auto"..**

**We will have the right and duty to defend any "insured" against a "suit" asking for such damages** or a "covered pollution cost or expense". **However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury"** ….**to which this insurance does not apply.** We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

    **1. Who Is An Insured**

The following are "insureds":

    **a. You for any covered "auto".**

23.     The Knight Policy included the following provision with respect to Exclusions under the policy:

    **B.     Exclusions**

**This insurance does not apply to any of the following:**

    4.     Employee Indemnification And Employer's Liability "Bodily injury" to:
    a.     An "employee" of the "insured" arising out of and in the course of:

      (1)    Employment by the "insured"; or

      (2)    Performing the duties related to the conduct of the "insured's" business; or

b.    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

      (1)    Whether the "insured" may be liable as an employer or in any other capacity; and

      **(2)**    **(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.**

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5.    Fellow Employee "Bodily injury" to:

    a.    Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

    b.    The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

24.    Additionally, the Knight Policy in pertinent part provides the following definitions:

**SECTION IV – DEFINITIONS**

A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

    B.    "Auto" means:
        1.    A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
        2.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

    C.    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

    F.    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

    G.    "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

    I.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

    Q.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

25. Finally, the Knight Policy includes the following MCS-90 Endorsement (under Form OMB No.: 2126-0008) :

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UDNER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to Jacksonville Transportation, Inc.

Dated at Lake Dallas, TX this 28 day of April, 2018

Amending Policy No. KSI000014-00 Effective Date 4-28-2018

Name of Insurance Company National Specialty Insurance Company

The policy to which endorsement is attached provides primary or excess insurance, as indicated by "[X]," for the limits shown:

[X] This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment; or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

## CLAIMS ARISING OUT OF THE UNDERLYING ACCIDENT

26. On April 02, 2020, Defendant, ERB initiated the Underlying Litigation seeking judgment against Jacksonville for damages pursuant to Florida's Wrongful Death Act and Vicarious Liability of its employee, MC, for the death of RB. *See* (ERB's Complaint attached hereto as Exhibit "B".).

27. In her Complaint, ERB alleges that Jacksonville was negligent for the death of RB.

28. In her Complaint, ERB does not state the relationship between RB, MC, and Jacksonville; essentially, ERB's Complaint is silent as to the fact that RB was an employee of Jacksonville and was in the course and scope of his employment with Jacksonville when he was killed.

## REQUEST FOR DECLARATORY JUDGMENT

29. On July 1, 2020, Knight sent Jacksonville a Reservation of Rights Letter informing Jacksonville that it was going to provide it a defense in the Underlying Litigation under a full reservation of rights. (A true and correct copy of Knight's Reservation of Rights Letter is attached hereto as Exhibit "C".).

30. Knight seeks a declaration of its rights and obligations with respect to the Underlying Accident and/or Underlying Litigation and its defense obligations related thereto.

31. Knight seeks a declaration that the Knight Policy does not require Knight to defend and/or indemnify Jacksonville against any suits or claims arising out of the death of RB and MC in the Underlying Accident and/or Underlying Litigation because they were "employees" under the Knight Policy.

32.     Knight seeks a declaration that the Knight Policy does not provide liability coverage for any suits or claims arising out of the bodily injury and/or death of RB and MC in connection with the Underlying Accident and/or Underlying Litigation.

33.     Knight also seeks a separate declaration that Knight does not have any duties or obligations under the MCS-90 Endorsement in the Knight Policy.

34.     There exists a bona fide, actual, present and practical need for a declaration that the claims arising from the deaths of RB and MC are not covered under the Knight Policy.

35.     There exists a bona fide, actual, present and practical need for a declaration that the claims brought against Jacksonville by ERB and EMC in connection with the Underlying Accident are excluded under the Knight Policy.

36.     There exists a bona fide, actual, present and practical need for a declaration that the MCS-90 Endorsement in the Knight Policy does not provided liability coverage for any claims and/or judgments against Jacksonville in connection with any claims arising from the deaths of RB and MC.

37.     There exists a bona fide, actual, present and practical need for a legal determination by this Honorable Court of the duties, rights, and obligations, if any, of Knight with regard to the Underlying Accident and/or Underlying Litigation.

38.     There exists a bona fide, actual, present and practical need for a legal determination by this Honorable Court of the duties, rights, and obligations, if any, of Knight with regard to the MCS-90 Endorsement in the Knight Policy in connection to the Underlying Accident and/or Underlying Litigation.

39.     The rights of Knight under the Knight Policy are dependent upon the facts and

law applicable to the facts affecting liability coverage under the Knight Policy and under the MCS-90 Endorsement.

40. There exist a present ascertained or ascertainable state of facts concerning the rights and obligations of Knight under the Knight Policy.

41. Knight and the Defendants have a present, actual and antagonistic controversy in the subject matter described herein.

42. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, Knight respectfully submits that it is entitled to a declaration that the Knight Policy does not provide liability coverage to Jacksonville for the claims asserted by ERB, EMC, and claims made in the Underlying Litigation.

43. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, Knight respectfully submits that it is entitled to a declaration that the MCS-90 Endorsement in the Knight Policy does not apply to the claims asserted by ERB, EMC, and in the Underlying Litigation

44. All necessary and present interests are before this Honorable Court.

45. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred or have been waived.

46. All proper and present antagonistic or adverse interests are before this Honorable Court by proper process.

## COUNT I: DECLARATORY JUDGMENT – KNIGHT POLICY

47. Knight re-alleges and incorporates paragraphs one (1) through forty-six (46) of this Complaint for Declaratory Judgment as if fully set forth herein.

48. Knight contends that liability coverage is excluded under the Knight Policy because RB and MC were "employees" of Jacksonville at the time of the Underlying Accident.

49. The Knight Policy does not provide insurance coverage for bodily injury and/or death of Jacksonville's "employees".

50. The Knight Policy specifically states in pertinent part:

> [w]e have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" ….to which this insurance does not apply.

51. The Knight Policy expressly excludes liability coverage for bodily injury and/or death of Jacksonville's "employees" while the "employee" is in the course and scope of his employment with Jacksonville.

52. The Knight Policy also expressly excludes liability coverage for bodily injury and/or death of Jacksonville's "employee" by another Jacksonville "employee" while the "employees" are in the course and scope of their employment with Jacksonville.

53. Therefore, because both RB and MC were Jacksonville's "employees" at the time of the Underlying Accident, Knight, respectfully submits that there is no actual or potential liability coverage under the Knight Policy for any claims by ERB and EMC in connection with the Underlying Accident and/or in the Underlying Litigation.

**WHEREFORE**, Knight Specialty Insurance Company prays this Honorable Court declares, as a matter of law, the following relief:

a. Knight does not have any duty to defend or to indemnify Jacksonville for any claims brought against it by ERB in the Underlying Litigation;

b. Knight does not have any duty to defend or to indemnify Jacksonville for any claims or lawsuits brought against it by ERB, EMC, and/or any other putative plaintiff alleging damages arising out of the deaths of RB and/or MC as a result of the Underlying Accident; and,

c. Such other relief as this Honorable Court deems fit and proper.

## COUNT II: DECLARATORY JUDGMENT- MCS-90 ENDORSEMENT

54. Knight re-alleges and incorporates paragraphs one (1) through fifty-three (53) of this Complaint for Declaratory Judgment as if fully set forth herein.

55. The MCS-90 Endorsement in the Knight Policy states that "[i]n consideration of the premium stated in the policy to which this endorsement is attached, [Knight] agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980.".

56. The MCS-90 Endorsement in the Knight Policy states that "[s]uch insurance as is afforded, for public liability, **does not apply to injury to or death of the insured's employees while engaged in the course of their employment**, or property transported by the insured, designated as cargo".

57. The insured" in the MCS-90 Endorsement is the named insured motor carrier specifically named in the MCS-90 Endorsement and/or the Knight Policy.

58. The MCS-90 Endorsement states that the endorsement was issued to "Jacksonville", the named insured under the Knight Policy.

59. At the time of the Underlying Accident, RB and MC were "employees" of Jacksonville and were in the course and scope of their employment with Jacksonville.

60. Therefore, because both RB and MC were Jacksonville's "employees" at the time of the Underlying Accident, Knight, respectfully submits that there is no actual or potential liability coverage under the MCS-90 Endorsement for any claims by ERB and EMC in connection with the Underlying Accident and/or in the Underlying Litigation.

**WHEREFORE**, Knight Specialty Insurance Company prays this Honorable Court declares, as a matter of law, the following relief:

a. Knight does not have any duty to defend or to indemnify Jacksonville for any claims brought against it by ERB in the Underlying Litigation;

b. Knight does not have any duty to defend or to indemnify Jacksonville for any claims or lawsuits brought against it by ERB, EMC, and/or any other putative plaintiff alleging damages arising out of the deaths of RB and/or MC as a result of the Underlying Accident;

c. Knight does not have any duty or obligation, coverage or otherwise, pursuant to the MCS-90 Endorsement to Jacksonville for any claims, lawsuits, and judgments against Jacksonville by ERB, EMC, or any other putative plaintiff alleging a loss arising out of the deaths of RB and/or MC as a result of the Underlying Accident; and,

d. Such other relief as this Honorable Court deems fit and proper.

## DEMAND FOR JURY TRIAL

Knight Specialty Insurance Company demands a jury trial on all issues triable by a jury.

Respectfully Submitted.

In Miami, Florida, this 6th day of October 2020.

/s/ *Ardalan Montazer*_____
Daniel Novigrod, Esq.
Florida Bar No.: 775401
Ardalan Montazer, Esq.
Florida Bar No.: 1013546
HIGHTOWER, STRATTON, NOVIGROD & KANTOR
4770 Biscayne Blvd.
Ste. 1200
Miami, Florida 33137
Tel: (305) 539-0909
Fax: (305) 530-0661
Email: miaservice@hightowerlaw.net
amontazer@hightowerlaw.net
dnovigrod@hightowerlaw.net
*Counsel for Plaintiff,*
*Knight Specialty Insurance Company*